IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2015 JAN 27  AM 10: 48
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
         DEPUTY

**KERRI KIRBY,**
    **Plaintiff,**

-vs-                Case No. A-14-CA-892-SS

**HEALTH CARE SERVICE CORP., an Illinois
Mutual Legal Reserve Company that Operates as
Blue Cross Blue Shield of Texas,**
    **Defendant.**

## ORDER

BE IT REMEMBERED on the 8th day of January 2015, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court is Defendant Health Care Service Corporation, an Illinois Mutual Legal Reserve Company that Operates as Blue Cross Blue Shield of Texas's Motion to Dismiss [#22], Plaintiff Kerri Kirby's Response [#27] thereto, Defendant's Reply [#30] thereto, and Plaintiff's Supplemental Response [#32] filed following hearing. Having reviewed the file, the documents, and the governing law, the Court now enters the following opinion and orders GRANTING the motion.

### Background

Plaintiff Kerri Kirby, a retired teacher insured through the Teacher Retirement System of Texas (TRS), a state agency, brings this suit for wrongful denial of insurance benefits against Defendant Health Care Service Corporation, better known as Blue Cross Blue Shield of Texas (BCBS), the administrator of her TRS insurance plan (TRS Plan or Plan). Kirby claims BCBS wrongfully denied her claim for reimbursement in connection with a spinal fusion surgery she

underwent in Germany in October 2012; BCBS claims planned medical procedures outside the United States are not covered under the TRS Plan.

Kirby filed this action in state court on August 21, 2014, *see* Notice Removal [#1], Ex. A at 8 (Orig. Pet.), and BCBS removed to this Court on September 24, 2014, invoking this Court's diversity jurisdiction. *See* Notice Removal [#1] at 1–2. Kirby thereafter filed her First Amended Complaint, which asserts claims for breach of contract, breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act (DTPA), and seeks economic and statutory damages. *See* First Am. Compl. [#11].

BCBS is not the insurer of Kirby's TRS Plan; rather, BCBS merely administers the plan pursuant to an Administrative Services Agreement (ASA or Agreement) with TRS. *See* Riley Decl. [#21-1] (sealed), Ex. 1 (ASA) at 1–2.[1] The Plan is funded exclusively by the Texas School Employees Uniform Group Coverage Trust Fund (Trust Fund), a trust established by the State of Texas. *See* TEX. INS. CODE §§ 1579 *et seq.* BCBS claims because the TRS Plan is funded exclusively by the Trust Fund and because TRS is a state agency which has not consented to suit

---

[1] Kirby's First Amended Complaint alleges she holds a group insurance policy "insured by BCBS." First Am. Compl. [#11] ¶ 7. BCBS has submitted under seal the Agreement between TRS and BCBS, which makes plain Kirby's allegation she is "insured by BCBS" is inaccurate. *See* ASA at 1–2. BCBS contends this Court may consider the Agreement without converting its motion into a motion for summary judgment because Fifth Circuit precedent allows "'documents that a defendant attaches to a motion to dismiss [to be] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" Mot. Dismiss [#22] at 2 n.1 (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). In BCBS's view, Kirby's complaint refers to BCBS's involvement with the TRS Plan and that involvement is central to Kirby's wrongful-denial claims. *Id.* Unfortunately, in making those arguments, BCBS cites not to the First Amended Complaint, the live pleading at the time BCBS filed its motion, but to the Original Petition Kirby filed in state court. *See* Orig. Pet. Further, the language BCBS cites as "refer[ring] to BCBS's involvement with the TRS Plan" is the language stating Kirby is "insured by BCBS." *See* First Am. Compl. [#11] ¶ 7; Orig. Pet. ¶ 6.01. Plaintiff, however, has not objected to this Court's consideration of the Agreement, and concedes in her Response the TRS Plan "is funded exclusively by the Texas School Employees Uniform Group Coverage Trust Fund." Resp. [#27] at 1. Further, the Court agrees BCBS's involvement with the TRS Plan is central to Kirby's claims. Accordingly, the Court will consider the Agreement without converting the motion to a motion for summary judgment.

under these circumstances, BCBS, like TRS, is immune from suit under the Eleventh Amendment and principles of sovereign immunity. For the reasons set forth below, the Court agrees.

## Analysis

### I.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that the defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*,

14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**II.  Application**

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. Although "Eleventh Amendment immunity" is a misnomer, because the phrase has become a term of art, this Court will use it also. *See Alden v. Maine*, 527 U.S. 706, 713 (1999). It is well-settled Eleventh Amendment immunity applies not only to actions where a state is actually named as a defendant, but also to "certain actions against state agents and state instrumentalities." *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997). Eleventh Amendment immunity has been extended to state agents and instrumentalities where granting immunity "protect[s] the state treasury from liability that would have [] essentially the same practical consequences as a judgment against the State itself." *Lake Cnty. Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979) (citing *Ford Motor Co. v. Dep't of Treas.*, 323 U.S. 459, 464 (1945)). In determining whether a state instrumentality may invoke immunity, "courts must review the relationship between the state and the entity in question, examining the essential nature of the proceeding, the nature of the entity created by state law, and whether a money judgment

against the instrumentality would be enforceable against the state." *Sw. Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 938 (5th Cir. 2001).[2]

BCBS claims it is entitled to immunity because the TRS Plan is funded entirely by the Trust Fund, and any judgment in this case would necessarily implicate the state treasury. In support of its position, BCBS relies heavily upon *Foster v. Teacher Retirement System*, 273 S.W.3d 883 (Tex. App.—Austin 2008), in which a Texas appellate court found Aetna, the private-company administrator of a TRS Plan, was immune from suit. *Id.* at 890. The *Foster* court first examined the relationship between Aetna and TRS, explaining under their contract, "Aetna was functioning as an agent for TRS" and "TRS agreed to indemnify Aetna for . . . losses or obligations incurred by Aetna in connection with its actions[,]" save gross negligence or criminality. *Id.* at 889. Based on that relationship, the *Foster* court reasoned Aetna's role was "comparable to the 'fiduciary intermediaries' in federal cases" which found "a private company is protected by Eleventh Amendment immunity if the suit amounts to one seeking to recover money from the state." *Id.* In such situations, the court explained, only where the plaintiff alleges an intermediary took actions clearly outside the scope of its authority or engaged in criminal or fraudulent conduct would the intermediary not be entitled to immunity. *Id.* at 890. Finally, the court noted the Plan was "fully funded by the State" and a holding Aetna was not immune "would implicate State funds and expose Aetna to liability from which its principal is protected[.]" *Id.*

---

[2] The Fifth Circuit has further refined the analysis, suggesting examination of a variety of factors: (1) whether state statutes and case law view the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local as opposed to statewide problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *City of El Paso*, 243 F.3d at 938 (citing *Clark v. Tarrant Cnty.*, 798 F.2d 736, 744–45 (5th Cir. 1986)). The second factor—the source of the entity's funding—is the weightiest factor. *Id.* (citing *Doe*, 519 U.S. at 429).

The *Foster* court's analysis tracks the proper (and relevant) factors to consider in deciding the immunity question: the court explores the relationship between the state and Aetna and asks whether a money judgment against Aetna would be enforceable against the state. *See City of El Paso*, 243 F.3d at 938. BCBS urges *Foster* is dispositive of the immunity question presented here. Despite the facial similarities between the parties in this case and in *Foster*, however, *Foster* does not map onto this case as seamlessly as BCBS urges for two reasons. First, the agreement between BCBS and TRS is materially different from the contract between the parties in *Foster*. Here, unlike in *Foster*, TRS and BCBS expressly agreed BCBS is *not* an agent of TRS, and *BCBS* agreed to indemnify *TRS* for liabilities, judgments, and the like arising from BCBS's performance of the Agreement. ASA at 18, 5.

Second, the "federal cases discussing immunity under the Eleventh Amendment" upon which the *Foster* court relied were either abrogated by or implicitly rejected in *United States ex rel. Barron v. Deloitte & Touche, L.L.P.*, 381 F.3d 438 (5th Cir. 2004), in which the Fifth Circuit held a Medicaid intermediary for the state was not entitled to immunity. BCBS and the *Foster* court, for example, each cite *St. Joseph Hospital v. Electronic Data Systems Corporation*, 573 F.Supp. 443 (S.D. Tex. 1983), for the proposition "[u]nder federal case law, a private company is protected by Eleventh Amendment immunity if the suit amounts to one seeking to recover money from the state," *see* Mot. Dismiss [#22] at 4; *Foster*, 273 S.W.3d at 889, but *Barron* abrogated *St. Joseph*, as well as two cases similar to *St. Joseph* previously decided by this Court. *See Barron*, 381 F.3d at 442 (disagreeing with the reasoning of *Tex. Hosp. Ass'n v. Nat'l Heritage Ins. Co.*, 802 F. Supp. 1507 (W.D. Tex. 1992), and *U.S. ex rel. Churchill v. Texas*, 2000 WL 33706360 (W.D. Tex. Nov. 15, 2000)). Additionally, in finding the Medicaid intermediary was not shielded by state immunity, the

*Barron* panel relied in part on a clause in the intermediary's contract with the state in which the intermediary agreed "to pay its own judgments and indemnify the State from any liability" arising from the intermediary's performance. *Id.* at 440 & n.7. As previously noted, the Agreement between BCBS and TRS contains a similar indemnity clause.

Nevertheless, the Court finds *Barron* distinguishable from this case, and, conducting the analysis in accord with *Foster* and *City of El Paso*, finds BCBS is a state instrumentality entitled to immunity from suit. First, although the Agreement disclaims an agency relationship between BCBS and TRS, BCBS does not have a great deal of autonomy thereunder. The Agreement provides "TRS has final decision-making authority and discretion to determine and interpret the intent, scope, design, meaning, and implementation" of the TRS Plan, "including but not limited to the issue as to whether or not coverage exists under [the TRS Plan] in a particular situation." *Id.* at 14–15. Further, BCBS's role is to "assist TRS" and to "execute, apply, and carry out TRS decisions and guidelines." *Id.* at 15. It thus appears to the Court the relationship between BCBS and TRS is such that BCBS is subordinate to TRS, and BCBS's decisions may at any time be overridden by TRS. The buck stops with TRS, not with BCBS, concerning all decisions related to the Plan.

Second, the presence of the indemnity clause is not enough to resolve the immunity question against BCBS, as the Supreme Court has held "[t]he Eleventh Amendment protects the State from the risk of adverse judgments even though the State may be indemnified by a third party." *See Doe*, 519 U.S. at 431. Additionally, the factual scenario the *Barron* court confronted was different than the one before the Court in a manner relevant to application of the indemnity clause: *Barron* was a qui tam action under the False Claims Act in which the relators alleged the Medicaid intermediary

acquiesced in fraudulent billing practices, *see Barron*, 381 F.3d at 439, while here, there is no allegation of fraud or wrongful conduct.

Finally, setting the indemnity clause aside, it appears under the Agreement, any judgment in this case would be the legal responsibility of TRS. The Agreement provides the "[Trust] Fund will be solely responsible for all funding, payments, and liabilities that are associated with or are the responsibility of TRS-ActiveCare." ASA at 11. Further, as noted above, TRS is ultimately responsible for decisions concerning whether coverage exists under the Plan under a particular scenario, and "TRS is ultimately responsible and liable for payment of Claims." *Id.* at 15. As this suit concerns allegedly wrongful failure to pay a claim, any judgment in this case would be a liability "associated with or . . . the responsibility of" TRS. Accordingly, the Court finds a judgment against BCBS would be the responsibility of TRS, and thus, would implicate the state treasury.

The parties' rather spare briefing does not engage with the above, instead focusing primarily on Kirby's claim a judgment against the Trust Fund should not be considered a judgment against the state treasury for Eleventh Amendment purposes because Plan members and participants also pay into the Fund. That argument may be easily dispensed with, however, as while Kirby is correct monies paid into the Trust Fund come from employees and participating entities as well as from the state, *see* TEX. INS. CODE § 1579.302 (stating the Trust Fund is composed of, *inter alia*, "all contributions made to the fund . . . from employees, participating entities, and the state"), she cites no authority for the proposition monies so paid do not thereby become state property, and the Court can see no reason to conclude they do not. Additionally, on this point *Foster* is less fraught, as the *Foster* court certainly did implicitly agree the Trust Fund was comprised of state funds. *See Foster*, 273 S.W.3d at 890. Kirby's first argument is therefore rejected.

Kirby's second argument against BCBS's claim of immunity is the Agreement is "ambiguous" with respect to the source of funds for payments made to BCBS. Kirby does not object to any of the provisions previously outlined by the Court; rather, she states the Agreement describes the Trust Fund as the "sole and exclusive source" for payment of claims in one provision and in another, states payments to BCBS are subject to appropriation of adequate funds by the Texas Legislature. See Resp. [#27] at 4. The Court disagrees with Kirby's characterization of these provisions as ambiguous. A plain reading of the Agreement reveals the first provision is concerned with the source of funding for TRS and for payments to BCBS, while the second places a limit on payments to BCBS. This plain reading is confirmed by the statutory provision describing the composition of the Trust Fund, which states it is composed in part of monies "appropriated by the legislature for contingency reserves, *administrative expenses*, or other expenses[.]" TEX. INS. CODE § 1579.302 (emphasis added). Kirby's second argument is therefore rejected.

Kirby's final argument was raised for the first time in her "Supplemental Response to Defendant's Motion to Dismiss," filed the week following hearing on the motion. In her Supplemental Response, Kirby claims BCBS waived any claim to Eleventh Amendment immunity when it voluntarily removed this case to federal court. Supp. Resp. [#32] at 1. Kirby cites *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613 (2002) in support of her argument. The Supreme Court, however, expressly limited the holding of *Lapides* "to the context of state-law claims[] in respect to which the State has explicitly waived immunity from state-court proceedings." *Lapides*, 535 U.S. at 617. As there is no dispute in this case the Texas legislature has not consented to suit against TRS, see Mot. Dismiss [#22] at 5–6, *Lapides* does not apply, and in any event, Kirby has pointed the Court to no legal authority suggesting an instrumentality of the state for

immunity purposes may waive the state's immunity. Kirby's final argument against immunity is therefore rejected.

## Conclusion

The Court finds BCBS is a state instrumentality shielded by state sovereign immunity. Kirby's pleadings therefore fail to state a claim upon which relief may be granted.

Accordingly:

IT IS ORDERED that Defendant Health Care Service Corporation, an Illinois Mutual Legal Reserve Company that Operates as Blue Cross Blue Shield of Texas's Motion to Dismiss [#22] is GRANTED; and

IT IS FINALLY ORDERED that Plaintiff Kerri Kirby's claims are DISMISSED WITH PREJUDICE.

SIGNED this the 26th day of January 2015.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE